UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN ANTHONY YOUNG,

    Petitioner,                                     Hon. Paul L. Maloney

v.                                                Case No. 1:06-CV-63

MARY BERGHUIS,

    Respondent.

_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Young's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Young's petition be **denied**.

**BACKGROUND**

        As a result of an incident which occurred on or about September 15, 2003, Petitioner was charged with armed robbery. (Trial Transcript, Dec. 16, 2003, 11-12). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Tracy Douglas**

On the evening of September 15, 2003, Douglas was employed as a desk clerk at the Amerihost Inn in Battle Creek. (Tr. 69). At approximately 11:50 p.m., a man entered the hotel and approached the front counter. (Tr. 69, 73). The man asked Douglas how much it would cost to obtain a room. (Tr. 70). Douglas glanced down at a paper on which the hotel's pricing information was located, at which point the man walked behind the counter. (Tr. 70-71). When Douglas told the man that he was not allowed behind the counter, the man responded that "it was a stick up" and that "he had a gun." (Tr. 71). The man then demanded money. (Tr. 71). After receiving the money from the cash register, the man departed the hotel. (Tr. 72-73). Douglas immediately telephoned the police. (Tr. 73). On the night of the robbery, the hotel employed video surveillance cameras. (Tr. 74-76). Douglas subsequently identified Petitioner as her assailant from a six-person line-up conducted approximately one week after the robbery. (Tr. 76-77).

**James Martens**

As of September 15, 2003, Martens was employed as a police officer for the Battle Creek Police Department working the 10:00 p.m. to 6:00 a.m. shift. (Tr. 89-90). During his shift that night, Martens was dispatched to the Amerihost Inn to investigate the robbery. (Tr. 90). Martens arranged with the hotel manager to recover the video surveillance information. (Tr. 92).

**Robert Corbin**

As of September 15, 2003, Corbin was employed as a crime scene technician for the Battle Creek Police Department working the 6:00 p.m. to 4:00 a.m. shift. (Tr. 100-01). During his

shift that night he was dispatched to the Amerihost Inn to assist Officer Martens. (Tr. 101). Corbin testified that he did not check the counter or cash drawer for fingerprints because he was informed that the perpetrator had not touched those surfaces. (Tr. 102). Corbin also noted that neither the counter nor the cash drawer possessed the type of smooth, non-porous surface necessary to obtain a fingerprint. (Tr. 102). Corbin investigated the crime scene and, aside from the surveillance video, was unable to locate any evidence. (Tr. 103-04).

**Lavern Brann**

As of September 16, 2003, Brann was employed as a detective for the Battle Creek Police Department. (Tr. 110). On that day, Brann downloaded the surveillance video from the computer system at the Amerihost Inn. (Tr. 110-15). A still photographic image of the robber was obtained from the surveillance footage. (Tr. 115). Brann was then provided another photograph of Petitioner, not obtained from the surveillance footage. (Tr. 115-16). After comparing these two photographs, Brann decided to conduct a line-up in which Petitioner participated. (Tr. 116). This line-up procedure occurred on September 23, 2003. (Tr. 116). At this line-up, Tracy Douglas identified Petitioner as the man that robbed her on the evening of September 15, 2003. (Tr. 116-19).

Following a jury trial, Petitioner was convicted of armed robbery. (Tr. 176). Observing that this constituted Petitioner's fifteenth felony conviction, the court sentenced Petitioner to serve 20-40 years in prison. (Sentencing Transcript, January 22, 2004, 3-8). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claim:

> I. Defendant-Appellant's conviction should be reversed because the trial court abused its discretion in failing to grant Defendant's request for an adjournment and

3

>                denying his request for travel funds for a defense
>                witness, denying him his right to due process.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Young*, No. 253626, Opinion (Mich. Ct. App., Oct. 4, 2005). Asserting the same claim, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Young*, No. 129720, Order (Mich., Dec. 27, 2005). On January 25, 2006, Petitioner initiated the present action in which he asserts the claim identified above.

## **STANDARD OF REVIEW**

Young's petition, filed January 25, 2006, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to

"prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case"

5

or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

## ANALYSIS

Petitioner was arraigned in this matter on September 17, 2003. (Dkt. #12). On November 24, 2003, Petitioner moved the trial court for "financial assistance for travel and lodging" to help secure the testimony of an alleged alibi witness, Tina Young, who resided in Minneapolis, Minnesota. (Hearing Transcript, Nov. 24, 2003, 6-9). According to Petitioner, this witness would testify that on the night of the robbery Petitioner was in Minneapolis. (Tr. 6-9). Petitioner did not request that the court "send [Young] a check ahead of time," but instead requested that the court simply authorize the reimbursement of her travel and lodging expenses. (Tr. 9).

At the hearing, Petitioner informed the court that there now existed a second alibi witness, Wendy Richardson, who also resided in Minnesota, for whom assistance from the court was not necessary. (Hearing Transcript, Nov. 24, 2003, 7-10; Hearing Transcript, Dec. 8, 2003, 3-5). Richardson was allegedly going to testify on Petitioner's behalf in a separate case involving a separate incident. (Hearing Transcript, Nov. 24, 2003, 6-10). Petitioner also requested that the court "set each matter for trial for a date certain so that [he] can give both of [his] witnesses, who are traveling from Minnesota, adequate notice, allowing them to arrange their schedule so they can be here." (Tr. 9). In ruling on Petitioner's motions, the court stated as follows:

> Well, that, for starters, they're going to have to make some - I think there's - I'm going to require - they're both coming from Minnesota; one has transportation, the ability to drive; I want an effort to be made to at least make the arrangements for them to come together. They're going to testify on the same day, same place, in each of the two cases[1] what you're saying. I'm not going to write a blank check and fly one here, for example, when the other one is driving. It just doesn't make sense. So there's going to have to be an effort made on the part of the Defendant to minimize the expense and it seems to me that it wouldn't be much of an effort for that to happen. Beyond that, once they arrive here, I guess I can address that. We're going to try these cases, they're both going to be tried, they're going to be back-to-back. They aren't going to be here very long. You'll know precisely what day they're going to have to testify in relation to when the trial begins. The Prosecution is going to have to go through their Case-in-Chief before you reach yours. So I guess we'll cross the bridge in terms of when that's going to be when we get to it. I don't have a date certain. You're not going to get a date certain at this point. It may very well be in mid-December, however. I'm going to start with Nolan Hall and then we're going to see where it's at, but this could very well be tried - tentatively it's going to be mid-December that we'll be trying this at this point, and when we reach a point with the other matter to know when it's going to be completed, I mean, you're going to get - you'll get some notice. You might get a week's notice

---

[1] Petitioner was also facing charges in a separate case involving a separate incident which occurred only a few hours after the robbery of the Amerihost Inn. (Tr. 6-10).

> or somewhere there abouts, but I'm putting you on notice right now mid-December, and I'll be more precise with you and give you at least a week's notice.

(Tr. 10-11).

On December 8, 2003, the court conducted a hearing on Petitioner's second motion for expenses for witness travel and lodging. Petitioner first informed the court that Tina Young would not be testifying in Petitioner's trials because "she has insufficient memory of the events to assist with any testimony." (Hearing Transcript, Dec. 8, 2003, 3). Petitioner also asserted that Wendy Richardson would be unable to testify "without the court providing transportation for her" because she was preparing to move to Las Vegas. (Tr. 3). Petitioner asserted to the court that Richardson's testimony was "vital" because she was "the only alibi witness." (Tr. 3-4). Accordingly, Petitioner requested that the court pay for Richardson's air fare and lodging. (Tr. 4). The Court denied Petitioner's motion, stating as follows:

> Well, I'm not willing to simply rely on an assertion of the witness that she's unable to travel to Battle Creek and, therefore, wants the County of Calhoun to provide the means for her to do that, and transportation, and lodging. I would like to point out that, in this original motion, prior motion that was filed, one of the allegations there was that, regarding Tina Young as an alibi witness, in Paragraph No. 5 of the November 14th motion, it states that Tina Young is the only alibi witness and Defense has no ability to. . .an alibi defense without her testimony. Now, on December 3rd, this motion is being filed, naming Wendy Richardson as the only alibi witness that can provide the essential testimony, which I just find that curious. But beyond that, I am - she - I'm just not convinced that there is a need for the County of Calhoun to provide the transportation and lodging for this witness to be transported here from Las Vegas, assuming that's where she is at this point in time. She's been aware, certainly before she even left here to go to Las Vegas, that she would be called as a defense witness, presumably, or she's on notice of that fact, and she was able to move, physically, apparently her belongings and everything else, out to Las Vegas, on her own, and as I said, I'm

> simply not convinced, just on the basis of this assertion, that there's
> a need for the County to provide these funds.

(Tr. 4-5).

On the morning of trial, immediately before jury selection was to begin, Petitioner requested an adjournment. (Trial Transcript, Dec. 16, 2003, 3). Petitioner asserted that he had only recently learned that his ex-wife, Lisa Young, was willing to testify on his behalf. (Tr. 3). According to Petitioner, Young "would be an alibi witness." (Tr. 3). Petitioner asserted that Young was willing to testify, but "couldn't get here this week due to job and family obligations." (Tr. 3). The Court denied Petitioner's request, stating as follows:

> Well, a couple of things. First, it certainly is untimely. I mean, here
> it is, the date of trial, we have a jury panel next door being oriented
> right now and ready to come in here in the next ten minutes or so, and
> to raise this issue at this point in time certainly is untimely. And, of
> all things, it seems to me, when it comes to an alibi, if anyone should
> know of potential alibi witnesses and who may assist the defense as
> alibi witnesses, it would be the Defendant, certainly. And so I'm not
> - I - it's untimely. There is not a good reason given, as far as I'm
> concerned, why this notice couldn't have been made long before now,
> long before now. So I am not inclined to grant the requested relief,
> and we are going to proceed with trial in this case.

(Tr. 5-6).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Petitioner asserts that the trial judge's refusal to grant his request for an adjournment violated his due process right to a fair trial.

The United States Constitution guarantees to criminal defendants "a meaningful opportunity to present a complete defense." *Varner v. Stovall*, 500 F.3d 491, 499 (6th Cir. 2007)

9

(quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  This right is not without limits, however, and may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also*, *Taylor v. Illinois*, 484 U.S. 400, 412-13 (1988) ("[t]he Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system").

The refusal by a trial court to grant a criminal defendant's request for an adjournment to secure the testimony of a witness may, depending on the circumstances, constitute a denial of due process.  *See Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000).  As the *Mackey* court stated:

> When a denial of a continuance forms a basis of a petition for writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process. . .We have considered the following factors in determining whether an accused was deprived of his right to due process by a denial of a motion for continuance: the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.

*Id.* (internal citations omitted).

The Sixth Circuit recently reiterated this standard, stating that "the exclusion of evidence in a criminal trial abridges an accused's right to present a defense only where the exclusion is arbitrary or disproportionate to the purpose it is designed to serve." *Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007) (quoting *Scheffer*, 523 U.S. at 330).  In this respect, the court observed that discovery violations which constitute "willful misconduct on the part of the defendant or his counsel will justify the exclusion of material evidence." *Ferensic*, 501 F.3d at 476 (quoting *Michigan v.*

*Lucas*, 500 U.S. 145, 152 (1991)).  As the Supreme Court has indicated, "[t]he Compulsory Process Clause provides [a criminal defendant] with an effective weapon, but it is a weapon that cannot be used irresponsibly."  *Taylor*, 484 U.S. at 410.

An evaluation of the relevant factors reveals that the trial court properly exercised its discretion in denying Petitioner's request for an adjournment.  There is no evidence that Petitioner exercised diligence in this matter.  In fact, the evidence reveals just the opposite.  As the trial court correctly observed, considering that Lisa Young was alleged to be an alibi witness, there existed no good reason for Petitioner's failure to timely identify her as such.  This is not a circumstance in which Petitioner may have been unable to identify a particular witness with whom he was unfamiliar or who he did not immediately realize could offer exculpatory testimony.  Rather, this is a witness who Petitioner now claims he visited with in Minnesota on the date the Amerihost Inn was robbed.  There exists no good reason why Petitioner could not have identified Lisa Young as an alibi witness in a timely manner.  His failure to do so was properly characterized by the state courts as a willful violation of the relevant rules of discovery.

In making his motion for adjournment, Petitioner did not assert that he could secure Young's appearance within a reasonable time.  Instead, he simply requested an open-ended continuance of unspecified duration.  Petitioner likewise failed to indicate with any specificity the testimony that Young would allegedly offer.  Instead, Petitioner simply asserted that Young "did see [Petitioner] in Minneapolis, on the date of this alleged offense."  Finally, while Petitioner naturally takes the position that Lisa Young's testimony would have established his innocence, such a conclusion appears to rest (at least in part) on the belief that the prosecution would not have been able to sufficiently prepare an effective cross-examination of Young.  In this respect, the *Taylor*

11

Court stated as follows:

> A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

*Taylor*, 484 U.S. at 415.

The Michigan Court of Appeals determined that Petitioner was not deprived of the constitutional right to present a defense. *People v. Young*, No. 253626, Opinion at 1-2 (Mich. Ct. App., Oct. 4, 2005). In light of the authority herein identified, the Court concludes that the decision of the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, its decision was not based on an unreasonable determination of the facts in light of the evidence presented. As such, this claim presents no issue on which habeas corpus relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Young's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order.

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                      Respectfully submitted,

Date:  May 23, 2008                                   /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge